```
                  UNITED STATES DISTRICT COURT

                   DISTRICT OF NEW HAMPSHIRE
```

Susan Robar,
    Claimant

    v.                              Case No. 12-cv-502-SM
                                    Opinion No. 2014 DNH 028

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
    Defendant

## O R D E R

Pursuant to 42 U.S.C. § 405(g), claimant, Susan Robar, moves to reverse or vacate the Commissioner's decision denying her application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act"). The Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is granted to the extent it seeks a remand for further proceedings, and the Commissioner's motion is denied.

**Factual Background**

I. Procedural History.

In 2010, claimant filed an application for Disability Insurance Benefits, alleging that she had been unable to work since March 8, 2007 (she subsequently amended her alleged onset date to February 27, 2010). That application was denied and she requested a hearing before an Administrative Law Judge ("ALJ").

In January of 2012, claimant, her attorney, and a vocational expert appeared before an ALJ, who considered claimant's application de novo. Two weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time before her alleged onset date through the date of his decision (January 27, 2012). Id. at 24.

Claimant then sought review of the ALJ's decision by the Appeals Council, which denied her request for review. Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, she filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act. Claimant then

filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 9). In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 12). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 11), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F.

Supp. 808, 810-11 (D. Mass. 1982). If she demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. § 404.1512(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do [her]
> previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm her decision.

**Background - The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520. Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability: February 27, 2010. Admin. Rec. at 17. Next, he concluded that claimant suffers from Crohn's disease, which constitutes a "severe impairment." Id. at 17. He also discussed her other alleged impairments - anemia, sinusitis, staph infections, seizures, asthma, hypothyroidism, fatigue, and chronic pain, but found that there was "little evidence that these alleged impairments result in more than minimal, if any limitation in the claimant's ability to perform work-related activities." Id. at 18. The ALJ then determined that claimant's impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1. Id. at 20.

Next, he concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of a range of light work.[1] He noted, however, that claimant would be "limited to only occasional interaction with the public, coworkers, and supervisors. In addition, [she] is limited to the performance of simple, routine, and repetitive tasks." Admin. Rec. at 20-21. In light of those restrictions, the ALJ concluded that claimant was not capable of returning to any of her prior jobs. Id. at 23.

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform. Relying upon the testimony of a vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, she "is capable of making a successful adjustment to other work that exists in significant numbers in the national

---

[2] "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

economy." Id. at 24. Consequently, he concluded that claimant was not "disabled," as that term is defined in the Act, from her alleged onset date (February 27, 2010) through the date of his decision (January 27, 2012).

### Discussion

Claimant challenges the ALJ's decision on two grounds, asserting that he erred: (1) by failing to properly address her allegations of disabling pain and fatigue; and, as a consequence, (2) by failing to properly determine her residual functional capacity. Because the court agrees that the ALJ inadequately supported his decision to discount the disabling effects of claimant's chronic fatigue, it need only focus on that issue.

Claimant suffers from Crohn's disease (which is reasonably well-managed with diet and medication), a seizure disorder, chronic acute sinusitis with recurrent infections[2], a major depressive disorder, chronic iron deficiency anemia, and chronic fatigue. Her anemia, fatigue, and depression are all causally related to her Crohn's disease. And, as Dr. Corinne Replogle (one of claimant's treating physicians) noted, claimant's "list of diagnoses and limitations are significant even just added up,

---

[2] Because of her Crohn's disease, claimant's recurrent infections cannot be treated with traditional oral antibiotics.

8

but they are actually synergistic, [making them] even more debilitating." Admin. Rec. at 476. See also Id. at 469 ("Mental Impairment Medical Source Statement" prepared by claimant's counselor, noting that claimant's "depression exacerbates [her] fatigue and concentration.").

Prior to her alleged onset of disability, claimant led a fairly active life: she was employed by the City of Concord as a dispatcher for the fire department, she was a member of a health club, she played recreational hockey, and she volunteered as a youth hockey coach. As her health worsened, her depression and fatigue appear to have become more acute. She lost her job, became less active, and, eventually, had to stop volunteering as a youth sports coach and moved in with her parents. There is no suggestion of malingering. See, e.g., Admin. Rec. at 473.

In the ALJ's written decision, there is only a single reference to claimant's fatigue:

> Although the treating physician, Alain Ades, MD, opined that given claimant's chronic fatigue "it is fairly obvious that she is unable to work" the medical record shows that her Crohn's disease is well controlled with medications.

Admin. Rec. at 22. That observation is, however, something of a non-sequitur. That claimant's Chron's disease is reasonably

9

well-managed with diet and medication, does not speak to her allegedly disabling fatigue. Nor does it address the point that, even though the Crohn's is well-managed, claimant still suffers from chronic iron-deficiency anemia (and attendant fatigue) as a result of malabsorption caused by that illness. See, e.g., Id. at 304, 647, and 761-82.

The ALJ dismissed claimant's allegations of chronic, debilitating fatigue as unsupported in the record. But the record is replete with references to her substantial fatigue. See, e.g., Admin. Rec. at 255, 268, 279, 427-28, 464, 478, 486-87, 632, 637, 650, 654, 664, 672, 679, 692, 706, 714, 725, and 767. Treating professionals have used terms like "chronic," "persistent," "worsening," and "extraordinarily prominent" when describing claimant's fatigue. In May of 2011, Dr. Ades, claimant's treating gastroenterologist, noted that:

> She continues to be extraordinarily fatigued. She describes herself as almost not being able to get out of bed on several occasions. I have told her that this has to do with her chronic inflammatory state.
>
> * * *
>
> I have again encouraged her application to Social Security, which has been going on for approximately four years. Given the chronic fatigue state it is fairly obvious to me that she is unable to work.

Admin. Rec. at 487 (emphasis supplied). In fact, Dr. Ades was sufficiently convinced of the severity of claimant's impairments - including her debilitating fatigue - that he apparently told her that he was willing to testify on her behalf at any disability hearings. See, e.g., Id. at 486. And, contrary to the ALJ's finding, Dr. Ades actually linked claimant's fatigue to a verifiable, medically determinable, and well-documented impairment: Crohn's disease and claimant's chronic inflammatory state. Fatigue is also a well-documented side-effect of some of claimant's numerous medications. See, e.g., Id. at 465.

In short, the ALJ's conclusion that "[t]here is little evidence that [claimant's] alleged impairments result in more than minimal, if any limitation in the claimant's ability to perform work-related activities," Admin. Rec. at 18, is not adequately supported by the record. The opinions of claimant's treating physicians - most notably Dr. Andes and Dr. Replogle - strongly suggest that claimant might well be incapable of engaging in sustained gainful activity as a result of her constellation of impairments, particularly as manifested by her fatigue. See, e.g., Admin. Rec. at 472-76 ("Physical Impairment Medical Source Statement" completed by Dr. Replogle); 487 (Dr. Andes opinion that it is "fairly obvious" that claimant is unable to work). To sustainably discount those opinions to the degree

he did, given the absence of any suggestion of malingering, more explanation by the ALJ was required. See, e.g., 20 C.F.R. § 404.1527(c)(2). See also Social Security Ruling, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p, 1996 WL 374188 (July 2, 1996).

## Conclusion

The court is well aware of the substantial caseloads borne by ALJs and the time constraints within which they must work. Given those limitations, it is difficult, as a practical matter for ALJs to discuss each factual finding in detail, with supporting citations to the administrative record. Nevertheless, in this particular case, the court is constrained to agree with the claimant: the ALJ's discussion of her chronic fatigue is insufficient and his decision to substantially discount the opinions of claimant's expert treating physicians is inadequately supported. Consequently, his conclusions about her ability to engage in substantial gainful activity are not adequately supported by the record.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is granted to the extent she seeks a remand for further proceedings. The

Commissioner's motion to affirm her decision (document no. 12) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the ALJ dated January 27, 2012, is vacated and this matter is hereby remanded for further proceedings consistent with this order. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 10, 2014

cc: D. Lance Tillinghast, Esq.
    T. David Plourde, Esq.